No. 15-1843

_____

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

**THE MUHLER COMPANY, INC.,**
*Plaintiff-Appellant,*

**v.**

**PLY GEM HOLDINGS, INC.,** *et al.,*
*Defendants-Appellees.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
(Case No. 2:11-cv-00862-SB)

_____

**APPELLANT'S OPENING BRIEF**

_____

Andrew K. Epting, Jr.
ANDREW K. EPTING, JR., LLC
46A State Street, Charleston, SC  29401
Tel: (843) 377-1871; Fax: (843) 377-1310
ake@epting-law.com

.        M. Dawes Cooke, Jr.
Bradley B. Banias
BARNWELL WHALEY PATTERSON
  & HELMS, LLC
288 Meeting Street, Suite 200
Charleston, South Carolina 29401
Tel: (843) 577-7700; Fax: (843) 577-7708
mdc@barnwell-whaley.com
bbanias@barnwell-whaley.com

*Counsel for Plaintiff-Appellant*

{00561043.DOC.1 }

# CORPORATE DISCLOSURE STATEMENT

Pursuant to FRAP 26.1 and Local Rule 26.1, The Muhler Company, Inc., who is the Appellant, makes the following disclosure:

1.    Is the Appellant a publicly held corporation or other publicly held entity?  No.

2.    Does the Appellant have any parent corporations? No.

3.    Is 10% or more of the stock of the Appellant owned by a publicly held corporation or other publicly held entity? No.

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? No.

5.    Is party a trade association? No.

6.    Does this case arise out of a bankruptcy proceeding? No.

September 11, 2015          s/Bradley B. Banias
                            BRADLEY B. BANIAS
                             Barnwell Whaley Patterson & Helms, LLC
                            288 Meeting Street, Suite 200
                            Charleston, South Carolina 29401
                            P: 843.577.7700
                            F: 843.577.7708
                            bbanias@barnwell-whaley.com

{00561043.DOC.1 }

i

# <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT ................................................ i

TABLE OF CONTENTS ............................................................................. ii

TABLE OF AUTHORITIES ................................................................... iiiv

JURISDICTIONAL STATEMENT ............................................................ 1

STATEMENT OF ISSUES ........................................................................ 1

STATEMENT OF CASE ........................................................................... 1

SUMMARY OF ARGUMENT ................................................................ 15

ARGUMENT ........................................................................................... 16

    I.    Lanham Act:  Muhler presented evidence that Ply Gem's deceptive labels proximately caused Muhler to lose sales, customers, and commercial opportunities ................................ 17

        A.  Muhler presented sufficient evidence of proximate cause.. 19

        B.  Muhler presented evidence of damages. ............................ 26

    II.    SCUTPA:  Muhler presented evidence that Ply Gem's deceptive labels proximately caused Muhler to lose sales. ..... 29

        A.  Muhler presented sufficient evidence of proximate cause.. 30

        B.  Muhler presented evidence of ascertainable damages....... 32

CONCLUSION ........................................................................................ 34

REQUEST FOR ORAL ARGUMENT ...................................................... 35

CERTIFICATE OF COMPLIANCE ........................................................ 35

# TABLE OF AUTHORITIES

## Cases

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ........................................................... 17

Baughman v. Am. Tel and Tel. Co.,
    306 S.C. 101, 410 S.E.2d 537 (1991)................................. 32

Brooks v. GAF Materials Corp.,
    41 F. Supp. 3d 474 (D.S.C. 2014) ...................................... 23

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986). ......................................................... 17

Charleston Lumber Co. v. Miller Housing Corp.,
    318 S.C. 471, 458 S.E.2d 431 (Ct. App. 1995)................... 30

Cohen v. Boxberger,
    544 F.2d 701 (4th Cir. 1976).............................................. 23

Exxon Co., U.S.A. v. Sofec, Inc.,
    517 U.S. 830 (1996) .......................................................... 23

Fisher v. Pelstring,
    No. 09-252, 2010 WL 2998474 (D.S.C. Jul. 28, 2010)
    (Wooten, J.) ....................................................................... 30

Foster v. Univ. of Maryland-East Shore,
    787 F.3d 243 (4th Cir. 2015).............................................. 16

Global Protection Corp. v. Halbersberg,
    332 S.C. 149, 503 S.E.2d 483 (Ct. App. 1998)................... 32

Glynn v. EDO Corp.,
    710 F.3d 209 (4th Cir. 2013).............................................. 16

Hurd v. Williamsburg County,
    353 S.C. 596, 579 S.E.2d 136 (Ct. App. 2004) ................................. 30

Lexmark Int'l, Inc. v. Static Control Components, Inc.,
    — U.S. —, 134 S. Ct. 1377 (2014) ...................................................... 3

Mendez v. Nationwide Prop. & Cas. Ins. Co.,
    910 F. Supp. 2d 784 (D. Md. 2012) .................................................. 27

Midland Mortgage Corp. v. Wells Fargo Bank, N.A.,
    926 F. Supp. 2d 780 (D.S.C. 2013) ................................................... 23

Oliver v. S.C. Dep't of Hwys. & Pub. Transp.,
    309 S.C. 313, 422 S.E.2d 128 (1992)................................................ 30

Foster v. Univ. of Maryland-East Shore,
    787 F.3d 243 (4th Cir. 2015) ............................................................. 16

Shealy v. Winston,
    929 F.2d 1009 (4th Cir. 1991) ........................................................... 17

Spriggs v. Diamond Auto Glass,
    242 F.3d 508 (4th Cir. 2001) ............................................................. 27

Taylor v. Medenica,
    324 S.C. 200, 479 S.E.2d 35 (1996).................................................. 32

Woodson v. DLI Properties, LLC,
    406 S.C. 517, 753 S.E.2d 428 (2014)................................................ 32

Wright v. Craft,
    372 S.C. 1, 640 S.E.2d 486 (Ct. App. 2006) ..................................... 29

## Statutes

15 U.S.C. § 1117.................................................................................. 18

15 U.S.C. § 1125.................................................................................. 18

{00561043.DOC.1 }

15 U.S.C. § 1127 ..................................................................... 17

28 U.S.C. § 1291 ..................................................................... 1

28 U.S.C. § 1331 ..................................................................... 1

28 U.S.C. § 1332 ..................................................................... 1

28 U.S.C. § 1367 ..................................................................... 1

S.C. Code Ann. § 39–5–20 ....................................................... 29

## JURISDICTIONAL STATEMENT

The district court initially exercised federal question jurisdiction over the Appellant's federal law claims under 28 U.S.C. § 1331 and supplemental jurisdiction over its state law claims under 28 U.S.C. § 1367. After dismissing the Appellant's federal claims, the district court exercised diversity jurisdiction over the Appellant's state law claims under 28 U.S.C. § 1332. The district court entered its final judgment on July 14, 2015. JA at 1461. The Appellant timely filed its notice of appeal on July 28, 2015. JA at 1462. This Court has jurisdiction over the entire appeal under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

Whether Appellant presented sufficient evidence of proximate cause and damages for its federal and state law claims to survive summary judgment?

## STATEMENT OF THE CASE

This is an unfair trade practices case challenging Appellees' practice of mislabeling its windows to gain an unfair advantage in the new construction and replacement window markets in coastal South Carolina. Appellant the Muhler Company, Inc. (Muhler) filed its initial complaint on

April 11, 2011. JA at 6. Its initial complaint raised federal claims under the Lanham Act and state law claims under the South Carolina Unfair Trade Practices Act and South Carolina common law. JA at 6. The complaint was amended twice,[1] and Appellees (together referred to as "Ply Gem") answered twice. JA at 7, 9.

Ply Gem moved for summary judgment on all claims on October 22, 2012. JA at 60. The motion was fully briefed, and on April 9, 2014, the district court held a hearing on the motion. JA at 823. The Court granted Ply Gem's motion for summary judgment on Muhler's federal claims and declined to exercise supplemental jurisdiction over Muhler's additional state law claims. JA at 820. Muhler timely appealed. JA at 34.

After Muhler filed its notice of appeal, the district court sought a limited remand to reinstate Muhler's state law claims. JA at 34. This Court agreed to the limited remand, and the district court reinstated Muhler's state law claims and simultaneously certified an immediate interlocutory appeal on Muhler's Lanham Act claims. JA at 35. In accordance with the parties' joint filing, this Court dismissed the interlocutory appeal to allow the district court to proceed with Muhler's state law claims. JA at 35.

---

[1] Muhler moved to file a Third Amended Complaint, JA at 23, but the district court eventually denied it as moot. JA at 33-34.

Ply Gem then moved for summary judgment on Muhler's state law claims on September 4, 2014. JA at 865. Muhler filed its opposition and simultaneously moved the district court to reconsider its previous decision on its federal claims in light of an intervening decision in Lexmark Int'l, Inc. v. Static Control Components, Inc., — U.S. —, 134 S. Ct. 1377 (2014). JA at 1057, 1166. The district court held a hearing on the motion to reconsider on December 15, 2014. JA at 1362. In light of LexMark, the district court reversed itself as to the grounds upon which the summary judgement was granted but nonetheless granted summary judgment on the further basis that the Plaintiff failed to prove proximate cause. JA at 1355.

The district court then held a hearing on Ply Gem's motion for summary judgment on Muhler's state law claims on April 16, 2015. JA at 1405. By written order, the district court granted Ply Gem's motion for summary judgment and entered a final judgment on July 14, 2015; the grounds again were the failure to prove proximate cause. JA at 1448, 1461. This appeal followed.

*Facts*

In 2006, Ply Gem stopped seeking independent testing and third party certification for the windows that are the subject of this suit. Instead, Ply Gem attached labels to its windows to make it appear as though the windows

were tested and certified. Ply Gem dealers sold these inferior[2] and mislabeled windows to unsuspecting consumers—builders, contractors, homeowners; predictably, the dealers were able to undercut other window dealers who only sold certified windows that in fact met code requirements.

Ply Gem and its distributors engaged in the sale of deceptively labeled windows from at least 2006 to 2010 in the new construction and replacement window markets in and around Charleston, South Carolina ("Charleston Market"). But for mislabeling the performance specifications on their windows, local building codes would have prevented Ply Gem's mislabeled windows from even entering the Charleston Market. However, once Ply Gem's up-labeled windows were in the market, Ply Gem dealers consistently undercut non-Ply Gem dealers because Ply Gem's cost of goods was unnaturally low; it costs much less to label a window with the requisite design pressure rating (or "DP rating"[3]) than it does to design, test, certify, and produce windows with that DP rating and greater structural integrity. Thus, from at least 2006 to 2010, Ply Gem's mislabeled windows caused Muhler, a local window distributor in the Charleston Market, to lose sales.

---

[2] The windows were sold as meeting certain structural requirements when in fact they were of inferior quality and cheaper to produce.

[3] A "DP rating" "describes a structural characteristic of a window, meaning its ability to resist wind." JA at 1127.

*Ply Gem's Mislabeling Scheme*

Because Ply Gem stopped seeking independent testing and third party certification for its windows in 2006, Ply Gem systematically mislabeled those windows from 2006 to 2010 in at least three ways. First, Ply Gem labeled their windows as compliant with the International Residential Code (IRC), though Ply Gem admitted that their windows did not and could not meet the IRC requirements at the time of labeling. <u>See generally</u> JA at 1058-60, 1079-1095. Second, Ply Gem embossed their permanent labels with the National Accreditation and Management Institute (NAMI) logo, though Ply Gem admitted they did not seek NAMI certification for such windows.[4] JA at 1079-95, 1162. Third, Ply Gem attached large temporary labels to their windows conspicuously announcing design and performance specifications, though Ply Gem admits no certified test results support the performance ratings listed on the various temporary labels. JA at 1085, 1088-89, 1164-65.

---

[4] A permanent label is typically yellow or gold and permanently attached to the frame of the window. In contrast, a temporary label is a sticker placed on the face of the window and removed upon installation. Here, the temporary labels were of such design to emulate the accredited logo. JA at 1085, 1162-1165.

*Deceptively Qualifying for the Charleston Market*

Such deceptive labeling practices enabled Ply Gem to sell its sub-building code windows into the Charleston market. For example, the IRC is the building code in effect in Mount Pleasant, South Carolina, a growing suburb of Charleston, South Carolina. JA at 1116. Unless windows are compliant with the IRC, they do not meet Mount Pleasant's building code and cannot be used in Mount Pleasant. JA at 1117. However, Ply Gem's mislabeling practices misled the building inspector for Mount Pleasant:

> [B]uilding code officials, myself included, have been misled by large temporary labels asserting a "DP 50" rating or the like when many of these windows are not even third party certified. . . . Ply Gem did not inform me that its test reports had not been third party certified.

JA at 1117; see also JA at 1121. The Mount Pleasant building inspector even noted that Ply Gem's attempt to retro-fit already installed windows to ensure they were IRC compliant would fail because the retrofit was not third-party certified. JA at 1117. Because Ply Gem's windows were not IRC compliant, the Mount Pleasant building inspector was clear: "they are not permitted to be utilized in this jurisdiction." JA at 1117.

The deceptive labels (finally) caught the attention of several code enforcement authorities in the Charleston Market in 2011. JA at 1121. On August 11, 2011, the Coastal Code Enforcement Association (CCEA) held a

meeting of building officials to discuss window labeling requirements.  JA at 1120.  "These agenda items were included in the August 2011 CCEA meeting because it appeared that building code officials were confused by large temporary labels affixed to windows that asserted a certain Design Pressure rating that was not supported by third party certification as required under the IRC."  JA at 1121.  Building inspectors in the counties comprising the Charleston Market attended the meeting and took part in the discussion.  JA at 1121.   Through these efforts it became "evident that many builders had properly ordered the correct DP rated windows for their location but were then unsure as to the receipt of [the] same."  JA at 1121.  But for Ply Gem's mislabeling practices, Ply Gem distributors could not sell or install Ply Gem windows in the Charleston Market.

### *Artificially Low Cost of Goods*

Ply Gem's deceptive labeling practices allow them to cut significantly their cost of goods.  Fundamentally, on its up-labeled windows, Ply Gem can use cheaper component parts, materials, and manufacturing techniques than windows with comparable certified performance characteristics.  JA at 1140-42.  For example, the cost to manufacture a window with a DP 20 rating is approximately 25% less than the cost to manufacture a window with a DP 50 rating.  JA at 1140-41.  Given the tight margins in window sales, a 25%

advantage in the cost of goods is nearly insurmountable. In addition, by foregoing the certification process, Ply Gem eliminated the typical costs associated with: "Time and materials for preliminary, in-house testing," "professional fees and costs of materials for a third-party to conduct testing and write a final test report," and "professional fees, administrative fees, and materials for third party certifying agency to final test results." JA at 1143. Again, these savings lowered Ply Gem's cost of goods.

In addition to manufacturing and certification costs, foregoing the certification process allowed Ply Gem to make mid-stream alterations to its windows. JA at 1141. Generally, any alteration to a window requires new testing and certification, rendering immediate fixes nearly impossible. JA at 1139-40. Because Ply Gem did not seek third-party certification, it was able to tailor its windows to potential customers without any delay or cost. JA at 1141. For example, various customers complained about the height of a sill riser on their Builder Series 800. JA at 1141. A sill riser is a wood component that adds about one inch to the interior sill stop to prevent water intrusion. JA at 1141. Due to the complaints, Ply Gem simply removed the sill riser. JA at 1141. Such a change would void any previous third-party certification, and it would require new testing and certification. JA at 1141. However, Ply Gem had stopped seeking third-party certification; thus, it

could make this change without any delay.  Such immediate changes—changes that distributors that only deal in certified windows cannot make—saved Ply Gem the time and costs associated with in-house testing, component parts, third-party testing, and third party certification.  JA at 1141.  Unsurprisingly, Ply Gem's artificially low cost of goods allowed its distributors to undercut Muhler in the Charleston Market and unfairly take sales from it.

### Ply Gem's Deceptive Labels Take Sales from Muhler

Ply Gem's deceptive labels caused Muhler to lose sales.  Window consumers—predominantly builders and contractors—rely on a window's labels to determine a window's performance specifications.  See generally JA at 1159, 1113, 1121, 1128, 1132, 1134.  When window shopping, builders and contractors first determine which windows meet the local building codes and then compare price of those windows.  JA at 1159-60; see, e.g., JA at 1111.  Ply Gem's deceptive labeling practices caused builders and contractors to compare the unnaturally cheap, up-labeled Ply Gem windows with market-priced, certified windows; builders and contractors chose to buy the cheaper and ostensibly equal Ply Gem windows instead of Muhler windows.  General contractor Freeman Barber testified that, when he was looking to purchase windows for a custom spec house in Mount

Pleasant, he considered the performance grade and price of comparable windows. JA at 1111. He chose Ply Gem windows due to their low price and their performance grade of DP 50, generally the lowest DP level allowed in the Charleston Market. JA at 1111-12. After installation, it became clear the windows were not DP 50, even though they were labeled as DP 50. JA at 1112-13. Based on his observations, Mr. Barber determined that "Ply Gem sold me improperly labeled and defective windows that are not watertight." JA at 1113.

This pattern repeated itself and Muhler's sales team lost sales to builders who chose Ply Gem's up-labeled windows due to their artificially low price. Gary Margolis sold windows for Muhler during the relevant years. JA at 1127. He has over thirty years of experience as a window sales representative. JA at 1127. Based on his personal experience trying to sell Muhler's products in the Charleston Market, he stated: "I believe I have lost window sales to Ply Gem due to Ply Gem's practice of falsely labeling windows with inaccurate [DP ratings] and selling those windows for a lower price than a certified window." JA at 1127. His statement was based on his personal knowledge and his personal business dealings in the Charleston Market. JA at 1127. Specifically, Mr. Margolis missed out on at least the following sales to builders because Ply Gem up-labeled lower quality

windows and sold them for an artificially low price: (1) Moss Construction, (2) David Weekly Homes, (3) Cline Construction, (4) Coleman Builders, (5) Strickland Homes, (6) Randy Jeffcoat Builders, and (7) Structures Builders. JA at 1128.

Similarly, Darren Nimchuck sold windows for Muhler at the relevant time. He has over fifteen years of experience as a window sales representative. JA at 1131. Based on his personal experience with window sales in the Charleston Market, he stated: "I believe I have lost window sales to [Ply Gem] due to Ply Gem's practice of falsely labeling windows with inaccurate [DP Ratings] and selling those windows for a lower price than a certified window." JA at 1131. Further, Mr. Nimchuck stated: "I have learned that Ply Gem is able to sell their windows for a lower price because they manufacture lesser quality windows that have not undergone and passed the testing process required to receive third-party certification to support their advertised DP Ratings." JA at 1131. Mr. Nimchuck's statement was based on his personal knowledge and business dealings with associates in the Charleston Market. JA at 1131. Specifically, Mr. Nimchuck lost at least one sale to Ply Gem for a home in the Poplar Grove Community in Hollywood, South Carolina: "The potential client relied on Ply Gem to properly label their windows and was misled into believing he

was receiving a properly rated and certified window for a lower price than I could offer when, in fact, he was buying a lesser quality, uncertified window." JA at 1132.

Ron Sykora experienced the same frustration while selling for Muhler. JA at 1134. Mr. Sykora has over 25 years of experience as a window sales representative. JA at 1136. Based on his experience in the Charleston Market, Mr. Sykora testified that he has lost sales to Ply Gem because Ply Gem up-labels uncertified windows and sells them for much less than certified windows. JA at 1135-36. Mr. Sykora's statements are based on his personal knowledge of the Charleston Market. JA at 1135. Specifically, Mr. Sykora lost at least one sale to Ply Gem for Bennett Hofford Construction on Daniel Island, South Carolina. JA at 1135. Mr. Sykora concluded that: "Builders like Hofford rely on Ply Gem to properly label their windows and are misled into believing they are receiving a properly rated window for a lower price than I can offer when, in fact, they are getting a lesser quality, uncertified window." JA at 1136.

Tim Sossamon sold Windows for Muhler company from 1998 to 2012. JA at 693. Based on his experience in the Charleston Market, Mr. Sossamon testified that he lost sales to Ply Gem windows because of their deceptive labeling practices. JA at 693-94. Specifically, Mr. Sossamon lost

at least three accounts with a long-time (8 year)customer, Structures Builders.  JA at 694.

Claire Richardson recounts a specific, large project where the buyer chose Ply Gem's up-labeled, uncertified windows because the buyer believed Ply Gem's less expensive windows were certified.  JA at 1104. LCM Construction approached Muhler through Ms. Richardson for a Charleston Housing Authority project with 469 openings.  JA at 1104. Muhler had worked with LCM before on similar projects.  JA at 1105.  The invitation to bid included window specifications, which Muhler's windows satisfied, but LCM went with a Ply Gem window due to price.  JA at 1104-05.  Muhler in fact later protested to explain that Ply Gem did not meet those specifications.  JA at 1105.

All in all, Henry Hay, the president of Muhler, testified that in addition to the companies and specific scenarios listed above, Muhler lost out to uncertified, low quality Ply Gem windows masquerading as less expensive, certified windows for projects for:  (1) Bolton Landing Apartments, (2) Park Place Apartments, (3) Pulte Homes, and (4) Beazer Homes.  JA at 1101.  Mr. Hay's testimony was based on his personal knowledge of Muhler's sales efforts, window sales in the Charleston Market,

and his personal observations of these neighborhoods in Charleston.  JA at 1143.

*Muhler's Damages*

Ply Gem's deceptive labeling practices caused Muhler to lose sales, customers, profits, and corporate opportunities.  Henry Hay determined that Muhler lost approximately 50% of its sales from 2006 to 2011 due to Ply Gem's mislabeling practices.  JA at 1100, 1143.   Mr. Hay went to great lengths to arrive at this figure.  First, he interviewed his sales staff to determine what former customers switched to Ply Gem, what specific projects Muhler lost, and the size of the lost projects and customers.  JA at 1143.  Second, Mr. Hay personally investigated the prevalence of Ply Gem windows in new construction and replacement projects through the Charleston Market.  JA at 1143.   For example, over the course of a year, he observed and charted the use of Ply Gem windows in a new neighborhood in Charleston called Hibben.  JA at 1142.  He learned that as soon as one house used the lower, uncertified Ply Gem windows, almost all of the new homes started including them.   JA at 1142.   Third, Mr. Hay reviewed his accountant's detailed financial statement for the relevant time periods.  JA at 1143.  Fourth, Mr. Hay consulted trade magazines and periodicals.  JA at 1143.  Fifth, to take into account the housing downturn during this period,

Mr. Hay expressed the number in a percentage of his actual business in those years to account for the overall fluctuations in the market. JA at 1143. Finally, he analyzed this data in light of his twenty years of experience in window sales in the Charleston Market. JA at 1143. With this percentage of lost sales, Ply Gem's mislabeled windows caused Muhler to lose approximately 16 million dollars. JA at 174.

## SUMMARY OF ARGUMENT

The district court improperly granted Ply Gem's motions for summary judgment on Muhler's federal and state law claims because Muhler presented evidence of proximate cause and damages under both the Lanham Act[5] and The South Carolina Unfair Trade Practice Act ("SCUTPA").

First, Muhler presented affidavits and deposition testimony that show Ply Gem proximately caused Muhler to lose sales because Ply Gem's deceptive labeling practices led consumers to forgo Muhler's windows as Ply Gem's windows appeared to be similar in quality, but were less expensive. Second, Muhler presented affidavits and deposition testimony

---

[5] Muhler also brought a claim under the South Carolina common law tort of unfair competition. JA at 1453. The district court equated the standards for this cause of action with those of the Lanham Act. JA at 1453-54. Thus, if this Court reverses the district court's decision on Muhler's Lanham Act claim—which it should—this Court must reverse the district court's decision on its common law unfair competition claim too.

that shows Muhler lost sales to Ply Gem's mislabeled windows.    Third, Muhler provided evidence to show that, under SCUTPA, Ply Gem's mislabeling was a proximate cause of Muhler's damages and Ply Gem could foresee the result of its deceptive labeling practices.    Finally, Muhler provided evidence of ascertainable damages under SCUTPA because Mr. Hay provided a reasonable basis for his calculation of damages.

Tellingly, Ply Gem provides no evidence to contradict Muhler's evidence; instead, Ply Gem argues under various theories that this Court should not consider Muhler's evidence.  Each theory fails.  For the reasons below, this Court should reverse the district court's decision and remand for trial.

## ARGUMENT

The district court improperly granted summary judgment to Ply Gem because Muhler presented ample evidence of proximate cause and damages under the Lanham Act and SCUTPA.  This Court should review the district court's decision to grant summary judgment de novo.  See, e.g., Foster v. Univ. of Maryland-East Shore, 787 F.3d 243, 248 (4th Cir. 2015).   To survive summary judgment, a non-movant need only "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'"  Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013) (quoting Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 252 (1986)).  If the non-movant presents evidence upon which a reasonable fact finder could reasonably find for it, summary judgment is inappropriate.  Liberty Lobby, 477 U.S. at 247-48. And all facts and reasonable inferences must be viewed and drawn in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  Thus, summary judgment should only be granted where, in the light most favorable to the non-movant, the non-movant fails to set forth facts sufficient to create a genuine dispute of material of fact such that a jury could not reasonably find for it. Liberty Lobby, 477 U.S. at 247-48; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

I.    Lanham Act:  Muhler presented evidence that Ply Gem's deceptive labels proximately caused Muhler to lose sales, customers, and commercial opportunities.

Muhler set forth facts sufficient for a reasonable jury to find that, under the Lanham Act, Ply Gem proximately caused damages to Muhler. The Lanham Act is, inter alia, intended to "protect persons engaged in [] commerce against unfair competition[.]"  15 U.S.C. § 1127.  To this end, it provides a robust private cause of action to remedy "false descriptions":

**§ 1125.  False designations of origin, false descriptions, and dilution forbidden.**

**(a) Civil action**

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the original sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).  A successful Lanham Act plaintiff is entitled "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117.  This broad cause of action and remedies are available to any party that falls within the Lanham

Act's zone of interest[6] who can show proximate causality.  Lexmark Int'l,
Inc. v. Static Control Components, Inc., — U.S. —, 134 S. Ct. 1377, 1388
(2014).

> A.    *Muhler presented sufficient evidence of proximate cause.*

Muhler presented facts that Ply Gem's deceptive labels proximately
caused consumers to withhold sales from Muhler.  To satisfy proximate
cause under the Lanham Act:  "a plaintiff suing under § 1125(a) ordinarily
must show economic or reputational injury flowing directly from the
deception wrought by the defendant's advertising; and that that occurs when
deception of consumers causes them to withhold trade from the plaintiff."
Lexmark, 134 S. Ct. at 1391 (internal quotation marks and citations
omitted).    This proximate cause standard prevents standing only for those
parties seeking to recover for harm that is "purely derivative of misfortunes
visited upon a third person."    Id. (internal quotation marks and citations
omitted).  But this must be balanced with the proposition that, "[i]n a sense,
of course, all commercial injuries from false advertising are derivative of

---

[6] Upon reconsideration, the district court held that Muhler "meets the first
part of the Lexmark framework, which requires a plaintiff to allege an injury
to a commercial interest in reputation or sales, as the plaintiff as alleged an
injury to sales."  JA at 1359.  Ply Gem did not appeal this holding.  Thus, it
is undisputed that Muhler falls within the Lanham Act's zone of interests.

those suffered by consumers who are deceived by the advertising." Id. at 1391.

Here, Ply Gem's fraudulent labels deceived builders and contractors and such deception caused them to withhold trade from Muhler. As a threshold issue, Ply Gem's deceptive labeling practices proximately caused Muhler to lose market share because Ply Gem's deceptive labels misled building inspectors in the Charleston Market who allowed them to be installed and sold in the Charleston Market. Building inspector Lee Cave was clear that uncertified windows do not meet the IRC and, therefore, do not meet the building codes of the Charleston Market. JA at 1117. From Mr. Cave's affidavit it is certain that the Ply Gem's deceptive labeling practices led Mr. Cave to approve windows in the Charleston Market. JA at 1118-19. Similarly, building inspector Melissa Hopkins testified from personal knowledge that various other building inspectors in the Charleston Market had the same experience with Ply Gem windows. JA at 1120-22. If Ply Gem had not up-labeled its windows, building inspectors would not have approved buildings with such windows and Ply Gem distributors could not have sold its uncertified windows in the Charleston Market. Ply Gem's mislabeling practices allowed it to compete for Muhler's market share on unfair terms. Ply Gem can and does not contest these facts, and as such,

these facts alone are sufficient to defeat summary judgment on the issue of proximate cause.

There is also evidence that Ply Gem fooled specific consumers into buying its products over Muhler's by attaching misleading labels to uncertified, cheaper windows. Contractor Freeman Barber testified that he relied on Ply Gem's labels to make his decision to buy Ply Gem windows because, due to the labels, he believed Ply Gem's windows to be comparable quality to Muhler's but the Ply Gem windows were less expensive. JA at 1111-13. Muhler sales staff, Gary Margolis, Tim Sossamon, Darren Nimchuck, Ron Sykora, and Claire Richardson all testified that Ply Gem's false labeling practices similarly misled their customers into believing that Ply Gem was offering a comparable product for much less expensive and their customers bought Ply Gem instead of Muhler's windows. JA at 693-95, 1104-05, 1126-1136. Muhler's sales staff lamented that it lost existing customers to Ply Gem because the consumers "rely on Ply Gem to properly label their windows and are misled into believing they are receiving a properly rated window for a lower price than I can offer when, in fact they are buying a lesser quality, uncertified window." JA at 1105; see, e.g., JA at 694.

This evidence reveals that Ply Gem's deceptive labels proximately caused Muhler to lose market share—Ply Gem used deceptive labels to sell sub-code windows in the Charleston Market—and specific sales—sales Muhler knows it lost to Ply Gem. Such evidence is a far cry from the "derivative" harm that <u>Lexmark</u> held was too attenuated to constitute proximate cause under the Lanham Act:

> For example, while a competitor who is forced out of business by a defendant's false advertising generally will be able to sue for its losses, the same is not true of the competitor's landlord, its electric company, and other commercial parties who suffer as a result of the competitor's "inability to meet [its] financial obligations."

<u>Lexmark</u>, 134 S.Ct. at 1391. Rather, here, Ply Gem's systemic up-labeling is directly harming Muhler, regardless of whether Ply Gem or their distributor is setting the final price, because Ply Gem's deceptive labeling and no-certification practices gives their distributor a price advantage as the cost of goods is much less and a service advantage as Ply Gem can quickly address any issues raised by the distributor's customers. JA at 1108-10 (discussing the price advantages to avoiding certification and the competitive advantage to making mid-stream changes). Unlike the <u>Lexmark</u> example, Muhler is not suffering an attenuated, derivative harm; rather, Muhler is losing sales because Ply Gem's deceptive labels allow its distributors to unfairly compete against it.

Further, at common law, "[n]ormally[] proximate cause is a question of fact for the jury, and it may be proved by direct or circumstantial evidence." Brooks v. GAF Materials Corp., 41 F. Supp. 3d 474, 484 (D.S.C. 2014). As Lexmark confirms, common law principles control the proximate cause analysis under the Lanham Act:

> Congress, we assume, is familiar with the common-law rule and does not displace it sub silentio. . . . The proximate-cause inquiry is not easy to define, and over the years it has taken various forms; but courts have a great deal of experience applying it, and there is a wealth of precedent for them to draw upon in doing so.

Lexmark, 134 S.Ct. at 1390 (internal citation and quotation marks omitted). And that wealth of precedent from the common law is consistent that proximate cause is a fact-intensive question, most appropriate for a jury, regardless of context. See, e.g., Exxon Co., U.S.A. v. Sofec, Inc., 517 U.S. 830, 840-41(1996) (noting proximate cause should be left to the fact-finder); Cohen v. Boxberger, 544 F.2d 701, 704 (4th Cir. 1976) ("Proximate cause is also a question for the trier of fact, who is entitled to make conclusions not only from the evidence presented but also from the inferences which arise out of the evidence presented."); Midland Mortgage Corp. v. Wells Fargo Bank, N.A., 926 F. Supp. 2d 780, 787 (D.S.C. 2013) ("Normally, proximate cause is a question of fact for the jury, and it may be proved by direct or circumstantial evidence."). Thus, because Muhler has presented direct and

circumstantial evidence that Ply Gem's deceptive labeling practices caused consumers to withhold sales from Muhler, proximate cause is a question most appropriate for a jury.

Ply Gem, however, argues that Muhler cannot show that Ply Gem's deceptive labels proximately caused Muhler to lose sales because Ply Gem does not set the final retail price of the windows and such retail price can be affected by multifarious factors. First, Muhler put forth evidence that omitting the certification process reduces Ply Gem's cost of goods. JA at 1141. Ply Gem does not counter this evidence; rather, it argues that "cost of goods" is not a determinative factor in the distributor's final price. Ply Gem does not go so far as to argue that the cost of goods is not a *factor* in the distributor's final price. And Muhler has presented sufficient evidence to make it a question for the jury whether Ply Gem's deceptive labeling cut the cost of goods so much that it proximately caused Muhler to lose sales to Ply Gem distributors because the distributors were starting with a significant, unfair advantage.

Second, as mentioned, Ply Gem's mislabeling practices also allowed Ply Gem and its distributors to provide customers with mid-stream solutions because they did not seek recertification. JA at 1141. The advantages to

this customer service do not rely on the various factors that affect the final retail price.

Third, nothing in <u>Lexmark</u> requires the deceptive practice to be the lone, sole cause of the commercial injury. It has to be a "proximate cause," but it does not have to be the sole cause. Muhler has put forth sufficient evidence to create a jury question about whether Ply Gem's mislabeling practices affected the price enough to be a "proximate cause" of Muhler's commercial injury.

Finally, Ply Gem's attempt to refocus the analysis on what comprises the retail price ignores its central role in the mislabeling. Ply Gem distributors do not label the windows. They do not put the temporary labels on the windows. They are not an intervening actor. Rather, distributors— like consumers—rely on Ply Gem's pamphlets and specifications and labels. Thus, Ply Gem is the party committing the deceptive act that is proximately causing Muhler's commercial injury.

This surplus of evidence identifying a direct line between Ply Gem's mislabeling practices and Muhler's lost sales creates a genuine question of fact as to proximate cause under the Lanham Act.

B.    *Muhler presented evidence of damages.*

Muhler presented sufficient evidence of damages in the form of lost sales.  The Lanham Act recognizes "injury to a commercial interest in reputation or sales."  <u>Lexmark</u>, 134 S.Ct. at 1390.  Muhler presented evidence of specific lost sales to the following builders:

- Moss Construction;
- David Weekly Homes;
- Cline Construction;
- Coleman Builders;
- Strickland Homes;
- Randy Jeffcoat Builders;
- Structures Builders;
- The Charleston Housing Authority; and
- Bennett Hofford Construction.

JA at 693-95, 1104-06, 1126-56.  Similarly, Muhler presented evidence that it lost out on specific projects to Ply Gem's mislabeled windows, including Bolton Landing Apartments, Park Place Apartments, Polty Homes, and Beazer Apartments.  JA at 1101, 1143.  Ply Gem has no independent evidence to refute these sworn statements.

Ply Gem, however, argues that this Court should not consider any of Muhler's evidence related to these lost sales because the testimony is inadmissible.  First, Ply Gem argues this Court should ignore Henry Hay's 2014 affidavit under the sham affidavit rule because it contradicts his previous deposition.  To preclude review of an affidavit based on a

contradiction in prior testimony, the testimony must present an actual contradiction: "application of the sham affidavit rule at the summary judgment stage must be carefully limited to situations involving flat contradictions of material fact." Mendez v. Nationwide Prop. & Cas. Ins. Co., 910 F. Supp. 2d 784, 789 (D. Md. 2012). The inconsistency must be "bona fide." Spriggs v. Diamond Auto Glass, 242 F.3d 508, 512 (4th Cir. 2001). Specifically, Ply Gem claims that, in his 30(b)(6) deposition, Mr. Hay testified that he did not know the costs associated with manufacturing windows and this testimony contradicts his most recent affidavit that asserts he is aware of the costs associated with manufacturing windows. However, there is no deposition testimony in the record where Mr. Hay actually testifies he knows nothing about the manufacturing process. In fact, Muhler did manufacture windows, JA at 1098, and after twenty years of experience in the industry, Mr. Hay certainly has knowledge of the manufacturing process, standards, and costs through his business interactions, his reading of periodicals, and his knowledge of window performance standards. See, e.g., JA at 928-933. Ply Gem's self-interested characterization of Mr. Hay's testimony cannot create contradictory deposition testimony.

Similarly, Ply Gem then argues that the Freeman Barber, Lee Cave, and Melissa Hopkins affidavits are inadmissible because each gave

contradictory testimony in depositions for a different case. Again, Ply Gem fails to point to a "bona fide" inconsistency between the affidavits and the affiants' deposition testimony. <u>Spriggs</u>, 242 F.3d at 512. And even if portions of these affidavits appear to contradict testimony in the excerpts of depositions Ply Gem provided, this Court cannot determine on the record presented whether these affiants later recanted, corrected, or further explained their "contradictory testimony." This concern is amplified where the "contradictory" deposition testimony was provided in a separate case that Muhler was not a party to. Thus, this Court should reject this argument.

Ply Gem then argues that the sales representatives' affidavits should not be considered because (1) they contain facts that contradict other facts in this case and (2) they contradict Mr. Hay's testimony that Muhler never bid for a job directly against Ply Gem. First, affidavits may properly create a question of fact that precludes summary judgment, and Ply Gem's argument seemingly admits that they do here. Second, the sales representatives' testify that they have bid and lost jobs against <u>Ply Gem dealers</u>. This does not contradict Mr. Hay's testimony that Muhler has never bid directly against <u>Ply Gem the manufacturer</u> for a job. JA at 997-98. Ply Gem's attempt to take testimony out of context in order to undermine an affidavit fails.

Finally, Ply Gem argues that Muhler's damages are too speculative because they are based on Mr. Hay's "gut feeling." Defs' MSJ at 24-25. It is important to note that Mr. Hay did not rely on his "gut feeling" to testify to the <u>fact</u> of lost sales; rather, after a lengthy interrogation on the source of his opinions related to his multiplier for the <u>amount</u> of lost sales, he cited to his "gut feeling." JA at 905-914 (discussing Mr. Hay's multiplier related to the <u>amount</u> of lost sales). Thus, regardless of Mr. Hay's reference to a "gut feeling," Muhler presented significant evidence of lost sales.

Muhler presented sufficient evidence that it lost sales to Ply Gem because Ply Gem sold up-labeled windows in the Charleston Market. Ply Gem's efforts to discredit this testimony fail. This is sufficient to survive summary judgment.

II.    SCUTPA:  Muhler presented evidence that Ply Gem's deceptive
       labels proximately caused Muhler to lose sales.

Muhler presented sufficient evidence of proximate cause related to its claim under SCUTPA to survive summary judgment. SCUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39–5–20(a); <u>see also</u> <u>Wright v. Craft</u>, 372 S.C. 1, 640 S.E.2d 486 (S.C. Ct. App. 2006). To recover in an action brought pursuant to the SCUTPA, a plaintiff must

establish the following three elements: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) an ascertainable monetary or property loss. Id. Further, the unfair act must proximately cause the alleged damages. Charleston Lumber Co. v. Miller Housing Corp., 318 S.C. 471, 482, 458 S.E.2d 431, 438 (Ct. App. 1995); Fisher v. Pelstring, No. 09-252, 2010 WL 2998474, at *9 (D.S.C. Jul. 28, 2010) (Wooten, J.).

### A.    *Muhler presented sufficient evidence of proximate cause.*

Muhler presented sufficient evidence of proximate cause to survive summary judgment under SCUTPA. Proximate cause under SCUTPA requires proof of both factual and legal causation. Hurd v. Williamsburg County, 353 S.C. 596, 611, 579 S.E.2d 136, 144 (Ct. App. 2004). Causation in fact requires the plaintiff to show that, but for the defendant's actions, the damages would not have occurred. Oliver v. S.C. Dep't of Hwys. & Pub. Transp., 309 S.C. 313, 316, 422 S.E.2d 128, 130 (1992). Legal cause, on the other hand, "is proved by establishing foreseeability." Hurd, 353 S.C. at 612, 579 S.E.2d at 144. Putting these two concepts together, an act "is a proximate cause of [an] injury if, in a natural and continuous sequence of events, it produces the injury, and without it, the injury would not have occurred. Id. However, a proximate cause need not be the sole cause;

rather, the "defendant's conduct can be a proximate cause if it was at least one of the direct, concurring causes of the injury." Id. Proximate cause is a factual question best left for the jury; "only in rare or exceptional cases may the question of proximate cause be decided as a matter of law." Id.

Here, Muhler provided sufficient evidence of proximate cause under SCUTPA. Ply Gem's deceptive labeling practices allowed it to compete in the Charleston Market against Muhler (even though Ply Gem's windows were not up to code), and its ability to sell ostensibly comparable windows with Muhler at a much lower price and provide immediate changes to window orders led Muhler to lose sales to Ply Gem. See supra § I(A).

Ply Gem, however, argues that Muhler has failed to show its mislabeling is the proximate cause of Muhler's lost sales because the manufacturer does not set the final sales price which is a function of unique rebates, discounts, and mark-ups. However, even if Ply Gem's mislabeling was not the sole proximate cause that Ply Gem took sales from Muhler, it was a direct, concurring cause of the injury. Hurd, 353 S.C. at 612, 579 S.E.2d at 144; see supra § I(A).

Though the legal standards are different, the same facts that support Muhler's evidence for proximate cause under the Lanham Act also support

the proximate cause under SCUTPA. Thus, Muhler has provided sufficient evidence to survive summary judgment for this claim.

### B.    *Muhler presented evidence of ascertainable damages.*

The district court erred by finding that Muhler did not present sufficient evidence of ascertainable damages. "Recoverable damages include compensation for all injury to plaintiff's property or business which is the natural and probable consequence of defendant's wrong." Global Protection Corp. v. Halbersberg, 332 S.C. 149, 159, 503 S.E.2d 483, 488 (Ct. App. 1998). "Actual damages under the UTPA include special or consequential damages that are a natural and proximate result of deceptive conduct." Id. (citing Taylor v. Medenica, 324 S.C. 200, 479 S.E.2d 35 (1996)). To be ascertainable, such damages cannot be purely speculative, see, e.g., Woodson v. DLI Properties, LLC, 406 S.C. 517, 753 S.E.2d 428 (2014), but they need not be calculated with "mathematical certainty." Baughman v. Am. Tel and Tel. Co., 306 S.C. 101, 116-17, 410 S.E.2d 537, 546 (1991). Rather, "the evidence [need only] be such as to enable the court or jury to determine the amount thereof with reasonable certainty or accuracy." Id. (internal quotation marks and citations omitted).

Here, Muhler suffered lost sales, customers, profits, and opportunities as the result of Ply Gem's mislabeling. See supra § I(B). Lost sales are not

too speculative to be recoverable under SCUTPA because they are the "natural and probable consequence of" Ply Gem's deceptive labeling. Global Protection, 332 S.C. at 159, 503 S.E. 2d at 488.

Though the legal standards are different, the same facts that support Muhler's evidence for damages under the Lanham Act also support its allegations of ascertainable damages under SCUTPA. Thus, Muhler has provided sufficient evidence to survive summary judgment for this claim.

## CONCLUSION

At bottom, Ply Gem attempts to have the District Court and this Court become the trier of fact. Ply Gem must admit it misrepresented its windows as code compliant when they were not. Ply Gem must admit its windows were cheaper to make and sell. Because Ply Gem misrepresented its windows as code compliant and were cheaper to make, it gained market share and in doing so deprived Muhler of sales and profits. There is substantial evidence in the record to support this. This case should be tried by a jury.

September 11, 2015        Respectfully Submitted

ANDREW K. EPTING, JR.
Andrew K. Epting, Jr., LLC
46A State Street, Charleston, SC  29401
P: 843.377.1871
F: 843.377.1310
ake@epting-law.com

.        M. DAWES COOKE, JR.
Barnwell Whaley Patterson & Helms, LLC

s/Bradley B. Banias
BRADLEY B. BANIAS
Barnwell Whaley Patterson & Helms, LLC
288 Meeting Street, Suite 200
Charleston, South Carolina 29401
P: 843.577.7700
F: 843.577.7708
mdc@barnwell-whaley.com
bbanias@barnwell-whaley.com

*Attorneys for Plaintiff-Appellant*

## REQUEST FOR ORAL ARGUMENT

The Appellant respectfully requests oral argument.

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [X] This brief contains 6,962 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     Further, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [X] This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.


September 11, 2015              s/Bradley B. Banias
                               BRADLEY B. BANIAS
                               Barnwell Whaley Patterson & Helms, LLC
                               288 Meeting Street, Suite 200
                               Charleston, South Carolina 29401
                               P: 843.577.7700
                               F: 843.577.7708
                               bbanias@barnwell-whaley.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 11, 2015, the foregoing document was served on

all parties or their counsel of record through the CM/ECF system if they are

registered users or, if they are not, by serving a true and correct copy at the

addresses listed below:

      Steven M. Pharr
      Matthew M. Pagett
      Pharr Law, PLLC
      8 West Third Street, Suite 600
      Winston-Salem, NC 27101

September 11, 2015          s/Bradley B. Banias
                         BRADLEY B. BANIAS
                         Barnwell Whaley Patterson & Helms, LLC
                         288 Meeting Street, Suite 200
                         Charleston, South Carolina 29401
                         P: 843.577.7700
                         F: 843.577.7708
                         bbanias@barnwell-whaley.com